**STATE of Missouri, Plaintiff-Respondent,**

v.

**Thomas VENEZIA, Defendant-Appellant.**

No. 58721.

Supreme Court of Missouri,
En Banc.

Nov. 12, 1974.

John C. Danforth, Atty. Gen., Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, David Robards, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Robert H. Wendt, St. Louis, for defendant-appellant.

HOLMAN, Judge.

Defendant-Appellant was charged with the offense of carrying a concealed weapon. See Sec. 564.610 RSMo 1969, V.A.M.S. He waived a jury. Upon trial before the court he was found guilty and punishment was fixed at imprisonment in the St. Louis Medium Security Institution for ninety days. Defendant appealed to the St. Louis District of the Court of Appeals which court adopted an opinion affirming the judgment. Upon the certificate of a dissenting judge the case was transferred to this court. Rule 83.01, V.A.M.R. It will be finally determined here the same as on original appeal. We affirm.

At 7:15 p. m. on July 28, 1972, St. Louis Police Officer Farrell observed defendant

urinating against the rear wall of the building located at 5221 Waterman. Farrell testified that defendant "walked back to the car. By the time I got out of the police car he was getting back into his car. I walked back and asked him to get out of the car. When he got out of the car I placed him under arrest for Lewd and Indecent Conduct." Officer Farrell further testified that there were three negro males in the rear seat of the car whom he told to get out; that he saw a small yellow envelope on the driver's seat; that he had been trained in the identification of narcotics and thought this envelope contained marijuana; that he opened the envelope and it appeared to contain marijuana and he arrested defendant for violating the controlled substance law; that he then opened a zipper-type carrying case which was on the front seat and found a fully loaded .38 calibre revolver therein; that defendant admitted that he owned the revolver and he then arrested him on the weapons charge.

The only evidence offered by defendant was the testimony of William Lee. This witness stated that he had been an employee of defendant and was in the car at the time in question; that the revolver had been lying exposed on the front seat but when he saw the officer approaching he had placed it in the zipper-case.

Defendant's first point is that "The court erred in not sustaining defendant's motion to suppress and in admitting the pistol in evidence." The evidence offered on the motion was about the same as heretofore stated except that defendant testified that he had started to drive away when the officer honked his horn, and motioned for him to stop and that he then voluntarily got out of the car. The officer also stated that when he arrested defendant he was "standing right beside his car." We also desire to point out that the recent case of State v. Achter, 512 S.W.2d 894 (Mo.App.1974) contains a very complete collection of the cases dealing with the warrantless search of automobiles incident to a valid arrest in traffic cases.

■ We rule that an officer making a lawful warrantless custodial arrest of the driver for a minor offense may, as an incident thereto, search such part of the interior of the automobile from which the driver might obtain a weapon; and that is true even though the arrestee has been required to get out of the car and is standing nearby.

■ The Fourth Amendment to the U. S. Constitution and Art. I, Sec. 15 of the Missouri Constitution, V.A.M.S., undoubtedly prohibit unreasonable searches and it is well settled that evidence obtained by a search that violates those provisions is inadmissible in a state court prosecution. The conventional method, of course, to lawfully search for items that may offend against the law is by use of a judicially issued search warrant. There are, however, well established exceptions to the search warrant requirement, one of which is a search incident to a lawful arrest. A search of the person arrested was approved in the early case of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914) wherein the court stated that the right to make such a search had been uniformly maintained in many cases. A few years later the right was expanded in Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145 (1925) the court stating that: "The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody, is not to be doubted." In Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 285, 69 L.Ed. 543 (1925) the court pointed out that in considering whether searches are unreasonable there is "a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon or au-

tomobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought."

The case of Chimel v. California, 395 U. S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) involved a search of a home and the decision restricted the area which could be searched incident to an arrest. In its discussion the court stated: "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain posession of a weapon or destructible evidence." 395 U.S. 762, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685. In Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) the court said that "Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. . . . and, to an extent depending on the circumstances of the case, to the place where he is arrested, . . . The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and

other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control." Other more recent cases which tend to support our decision are Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612 (1972) and Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 413 U.S. 433 (1973).

Defendant relies solely upon the case of State v. Meeks, 467 S.W.2d 65 (Mo.1971) in support of his contention that no part of an automobile may be searched following an arrest for a minor offense. The principal opinion in Meeks supports that contention but only two judges concurred therein. Two other judges concurring in result stated that they would permit a search after a traffic arrest only if there was "something more" in connection with the operation of the car or other suspicious actions. The dissenting judges had the view that it is reasonable to search that portion of the interior of the automobile which is accessible to the driver or other arrestee. The dissenting opinion states the following:

" 'The right to search incident to arrest is deeply rooted in the common law. The rule reflects, as Justice Cardozo once observed, a "shrewd appreciation for the necessities of government." As a practical matter, the courts recognized that a police officer must have some power to conduct an immediate search following arrest in order to remove any weapons from the reach of a suspect and to prevent him from destroying evidence of the crime. While early decisions limited the search to the person of the accused, the doctrine was extended in later years to things within the "immediate possession" or "control" of the suspect.' Hotis, Search of Motor Vehicles, Dickinson Law Review, 1969, p. 421. And I approve the statement of Burton Agata in St.

Louis University Law Journal, 1962, p. 6, that 'The necessity to search for weapons or other instrumentalities for use in escape creates a situation where the interest of privacy is subordinated to the need for providing an arresting officer with an effective means to protect himself from bodily injury and, perhaps death. What then is the basis for suggesting that a person properly arrested has a claim to privacy which is greater than the interest in preserving the arresting officer's life, merely because the arrest is for a traffic violation?' The recent decisions in State v. Moody, Mo. Sup., 443 S.W.2d 802, and State v. Robinson, Mo.Sup., 447 S.W.2d 71, sustain the validity of the search of the person of the driver as an incident to the lawful arrest of the driver for a traffic offense. One basis of the holdings expressed in Moody is the necessity for providing the arresting officer with protection against injury or death." 467 S.W.2d 69.

As indicated by our heretofore stated holding the view advocated in the dissenting opinion in Meeks is now adopted as the rule in this state. We think that conclusion is dictated by the principles stated in the recent decision in United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed. 2d 427 (December 1973)[1] which considerably clarified previous search restrictions. In that case the officer made a full custody arrest of the driver of a car for a driver's license violation. In searching the arrestee's person he found heroin in a cigarette package in a coat pocket. It was held that such a search was not only an exception to the warrant requirement but was also a reasonable search under the Fourth Amendment. While we recognize that Robinson deals with a search of the person we think a reading of the opinion clearly indicates that its principles would apply equally to a search of the area of a car under the control of the arrestee.

The court at the outset stated that "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment. This general exception has historically been formulated into two distinct propositions. The first is that a search may be made of the *person* of the arrestee by virtue of the lawful arrest. The second is that a search may be made of the area within the control of the arrestee." 414 U.S. 224, 94 S.Ct. 471. Thereafter the opinion cites with approval a number of cases which state that it is permissible to search the area under the control of the arrestee. Concern for the safety of arresting officers was indicated by a quotation of statistics to the effect that 30% of the shootings of police officers occur when an officer stops a person in an automobile. The court stated further: "The justification or reason for the authority to search incident to a lawful arrest rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial. . . . Nor are we inclined, on the basis of what seems to us to be a rather speculative judgment, to qualify the breadth of the general authority to search incident to a lawful custodial arrest on an assumption that persons arrested for the offense of driving while their licenses have been revoked are less likely to [possess] dangerous weapons than are those arrested for other crimes. . . . The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification. It is the fact of the

[1]. Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973) was decided the same day as Robinson and is a similar holding.

lawful arrest which establishes the authority to search, . . ."

The view we take of the effect of Robinson is the same as that expressed by the court of appeals in Achter, supra, 512 S.W. 2d 901 [14]. A number of other courts have already stated the view that the effect of Robinson is to authorize a search of more than the person of the arrestee. See United States v. Artieri, 491 F.2d 440 [1] (2nd Cir., 1974) and United States v. Kaye, 492 F.2d 744 (6th Cir., 1974). See also United States v. Greene, 371 F.Supp. 570 (Dist.Ct.N.J.1974), State v. Gluck, 83 Wash. 2d 424, 518 P.2d 703 [7, 8] (1974) and 68 Am.Jur.2d, Searches and Seizures, Sec. 96, p. 750.

As indicated, we have the view that the trial court did not err in overruling the motion to suppress and in admitting the weapon in evidence. To the extent that State v. Meeks, supra, is in conflict with this decision it should no longer be followed.

■ Defendant's remaining point is that the court erred in failing to sustain his motion for judgment of acquittal filed at the close of the case. In support of this contention he says that ". . . there was no evidence adduced by the state or the defense that the Appellant committed any overt act to conceal the pistol. In addition, there were no facts adduced on behalf of the state or the defense from which it could be inferred that Appellant possessed a criminal intent to conceal the pistol." There is no merit in either suggestion. The intent to conceal may be inferred from the fact that the pistol was concealed in the manner detailed in the evidence, State v. Crone, 399 S.W.2d 19 [4] (Mo.1966). It was shown by the evidence that the gun belonged to defendant and was actually concealed in his carrying case which was lying on the front seat of defendant's car within his reach. That evidence was sufficient to support a finding of guilt, the trial judge having obviously rejected the testi-mony of defendant's witness Lee. State v. Rice, 490 S.W.2d 27 (Mo.1973).

Judgment affirmed.

DONNELLY, C. J., and MORGAN, HENLEY and FINCH, JJ., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

BARDGETT, J., concurs in result and concurs in separate concurring opinion of SEILER, J.

SEILER, Judge (concurring in result).

There were three arrests made here: first for lewd and indecent conduct; second, for violation of controlled substance law, and third, for carrying a concealed weapon. The arrest for possession of marijuana and the arrest for carrying a concealed weapon were not made until after the envelope and the satchel, respectively, had been opened, so neither the search of the envelope nor the search of the satchel can be justified as incident to the latter two arrests. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); State v. Koen, Mo., 487 S.W.2d 562 (1972). The searches must stand or fall on the arrest made for lewd and indecent conduct. There is nothing in this case involving an arrest for a minor traffic violation and the case does not present any problem or question as to what can be done about a search of an automobile when the police make a stop by reason of a traffic violation, as was the case in State v. Meeks, 467 S.W.2d 65 (Mo. banc 1971). The offense here had nothing to do with traffic or the operation of a motor vehicle.

Likewise, the case does not involve search of the person of the arrestee, as in United States v. Robinson, 414 U.S. 218, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) or Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). The defendant was

personally searched, true, but the challenged search and seizure here is of the weapon, which was found in a satchel on the front seat of the automobile. It was not found on the defendant's person.

As stated in the principal opinion, the arrest of defendant for lewd and indecent conduct was made when defendant got out of his car, when defendant was standing right beside the car. The open satchel, which proved to contain the loaded gun, was in plain view on the front seat "right next to the position where the driver was sitting". Under these circumstances, the seizing and opening of the satchel was well within the law as declared by Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

In State v. Meeks, Mo., 467 S.W.2d 65, 66, supra, it was pointed out there is no Missouri case where the search of an automobile, following a warrantless arrest and removal of the person from the car, has been upheld upon the showing of nothing more than the mere isolated fact of arrest for a minor violation. In the case before us, not only was there an arrest of the driver as he got out of the car, there was on the seat next to where he had been sitting an open satchel, contents unknown, within his easy reach and access. In the Meeks case, the marijuana was in a closed "console" and in a closed glove compartment, and the search was beyond question an exploratory search, nothing more, and was held so by a majority of the court, see 467 S.W.2d l. c. 66 where the search is described in the principal opinion as a "purely exploratory venture—a fishing expedition" and 467 S.W.2d l. c. 69 where Judge Finch, in his concurring opinion, says he would reverse and remand because it was "an unauthorized, warrantless, exploratory search." The Meeks case and the present case are not at all factually similar—one was an exploratory search, one was not. The dissenting judges in Meeks were willing to permit such exploratory search; the majority was not.

Neither United States v. Robinson, supra, nor its companion case of Gustafson v. Florida, supra, approves such exploratory search of an automobile. Neither case is in point. In both cases, there was no question of the search of an automobile before the court. The searches in both cases were of the persons of those arrested and the evidence sought to be suppressed was the evidence which was found on the person. In Robinson, it was heroin capsules found in a cigarette package in the breast pocket of the suspect's overcoat; in Gustafson, it was marijuana cigarettes found in a cigarette box in a pocket of the suspect's suit coat.

In the Robinson opinion, the court points out that the decision of the court of appeals was on the issue of how far the police officials could go in searching the person of the prisoner. What the Robinson case held was that the officer was entitled to search the person of the arrestee and inspect what was found on the person. The court reversed the judgment of the court of appeals which had held that the heroin found in the search of the person was inadmissible, as constituting a search violative of the Fourth Amendment.

The dissent in Robinson was on the basis that the search of the person was too broad for an arrest for a routine traffic violation, arguing there was no justification for opening the cigarette package and looking inside. There was no consideration in either the majority opinion or the dissent as to what could be done about searching an automobile.

In the Gustafson case again the majority opinion dealt with what kind of search could be made of the person of the arrestee. The court's holding was "that upon arresting petitioner for the offense of driving his automobile without a valid operator's license, and taking him into custody, Smith [the policeman] was entitled to make a full search of petitioner's person incident to that lawful arrest."

In the concurring opinion of Mr. Justice Stewart, it is made clear he is doubtful as to whether the kind of arrest and search made in Gustafson may not have violated petitioner's Fourth and Fourteenth Amendment rights, but no such claim was presented to the court and, on the contrary, petitioner conceded the constitutional validity of the arrest. So Mr. Justice Stewart concludes that the incidental search of his person was constitutionally valid. Nothing is said about searching an automobile following a traffic arrest.

In his concurring opinion in Gustafson, Mr. Justice Powell dealt with the matter of search of the person, concluding that "a valid arrest justifies a full search of the person." Again, nothing is said about searching an automobile.

The dissent in Gustafson is directed to the search of the person, taking the position there was no justification for opening the cigarette box found in the coat pocket and looking inside the box.

As applied to the factual situation presented by the case before us, the Robinson and Gustafson cases are no authority for declaring a rule "that an officer making a warrantless custodial arrest of the driver for a minor offense may, as an incident thereto, search such part of the interior of the automobile from which the driver might obtain a weapon." This rule purports to authorize exploratory searches. Although it refers to that part of the interior from which the driver might obtain a weapon, it does this merely as a means of marking out the boundaries which can be searched. It makes no requirement that there be some likelihood or danger that there is a weapon or that the officer is apprehensive on this score or that the search has any connection with the offense for which the arrest was made. So long as the part of the interior searched is a part where a weapon might be placed subject to access, it can be searched. This means virtually the complete interior of the car can be searched any time there is a valid arrest of the driv-

er on any charge whatsoever, no matter how petty.

The principal opinion uses a phrase new to Missouri law—"custodial arrest." Presumably this means an arrest where the officer takes the suspect into custody, not where he is going to release the suspect with a summons, although paradoxically it would seem the officer would be in more danger in the latter instance than he would be in the former, where he has the suspect in custody, outside the car, much more subject to control than were he inside the car.

The rule announced by the principal opinion means that anytime a police officer decides to make a "custodial arrest", no matter how petty or minor the violation involved may be, he has carte blanche to search the interior of the car for anything he can turn up, so long as it is found in a part of the interior from which the driver conceivably could obtain a weapon if one were there. It makes no difference that the officer is not apprehensive for his safety or that, as here, there is nothing which could be found in the car relating to the offense for which the arrest was made.

No one knows how many such searches will be made. We will hear only of the ones where something is found and the suspect is tenacious enough to preserve the question in a court of law and carry it through to appeal. We will not hear of the countless instances where a citizen is required to submit to an intensive search of the interior of his automobile and nothing illegal or incriminating is found. It does not matter how personal, confidential, or intimate may be the papers, articles, or objects in the automobile, whether in a sealed envelope, sack, carton, box, brief case, closed or open—all these may be opened, exposed, read, and considered by the officer under today's decision. It fosters the very kind of abuse of government power the Fourth Amendment was designed to ¹prevent. There is no need for it and we should emphatically reject it.

If the courts do not enforce the constitutional rights of the citizen no one will. By adopting the rule espoused by the principal opinion, we are withdrawing from the field and leaving the citizen to the whim of the police. For these reasons, while I agree that under Chimel v. California, supra, the trial court was correct in overruling the motion to suppress, I am unable to subscribe to the exploratory search rule announced by this case.