**STATE of Missouri, Plaintiff-Respondent,**

v.

**Ken COLE, Defendant-Appellant.**

**No. 13766.**

Missouri Court of Appeals, Southern District, Division Two.

March 18, 1986.

William L. Webster, Atty. Gen., Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

James D. McNabb, Asst. Public Defender, Springfield, for defendant-appellant.

PREWITT, Chief Judge.

Defendant was convicted, following nonjury trial, of the class C felony of stealing. See § 570.030, RSMo Supp.1984 (now amended). He contends that the trial court erred in overruling his motion to suppress evidence that two guns were found in an "apartment" he occupied. The state contends that our review is limited to "plain error" because no motion for new trial was filed. That contention is erroneous. In cases tried without a jury a motion for new trial is not necessary to preserve contentions for appellate review. Rule 29.-11(e)(2)(A); *State v. Turnbough,* 604 S.W.2d 742, 745 (Mo.App.1980).

Before relating the specifics of defendant's contentions, certain facts relevant to the issues will be set forth. Suspecting that defendant had stolen two guns, law enforcement officers went to the home of defendant's mother, Harriet Cummings. The officers did not have a warrant. Defendant, age 22 years, resided in his mother's home. Neither defendant nor his mother were present when the officers arrived. Jack Cummings, the mother's ex-husband, who lived at the house, answered the door. Apparently Mr. and Ms. Cummings were living together as if they were husband and wife, although the residence was owned by Ms. Cummings. Jack Cummings told the officers there were some guns in defendant's room in the basement. He took the officers downstairs, took a key from his front pocket, unlocked the door to defendant's room, and allowed the officers to enter. The guns were visible in the room.

The officers then went outside to wait for defendant's return. When he returned, the officers tried to stop him for questioning. Defendant went into the house. The officers followed and arrested him in the basement room. After the arrest, defendant's mother signed a consent for the officers to search defendant's room. The officers then seized the guns. At trial, over defendant's objection, the trial judge allowed the two guns to be introduced into evidence.

Defendant contends that the trial court erred in overruling his motion to suppress because neither his mother nor Jack Cummings had authority to grant a search of defendant's "apartment" as they did not have joint access or control of those premises.

Searches without a valid search warrant are unreasonable unless shown to be within one of the exceptions to the rule that a search must rest upon a valid warrant; the burden is upon the state to show that the search comes within such an exception. *State v. Olds,* 603 S.W.2d 501, 506 (Mo. banc 1980).

A search conducted pursuant to valid consent is constitutionally permitted. *State v. Berry,* 526 S.W.2d 92, 98 (Mo.App. 1975). In order to establish consent, the state must prove by a preponderance of the evidence that the person giving the consent did so voluntarily and had the authority to do so. *State v. Peterson,* 525 S.W.2d 599, 608–609 (Mo.App.1975).

■ A third party with joint access or control of the premises sought to be searched has authority to consent to a search. *State v. Blair*, 638 S.W.2d 739, 750 (Mo. banc 1982), cert. denied 459 U.S. 1188, 103 S.Ct. 838, 74 L.Ed.2d 1030 (1983). "[T]he consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared." *State v. Johns*, 679 S.W.2d 253, 262 (Mo. banc 1984), cert. denied, —— U.S. ——, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). In *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), in footnote 7, the Court stated:

> The authority which justifies the third-party consent does not rest upon the law of property, ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Defendant relies principally upon *State v. Peterson*, 525 S.W.2d 599 (Mo.App.1975). In *Peterson*, the only evidence regarding access to the area in question was that the defendant's basement "room" was "exclusively" the defendant's "area" and "no one else had a right to be there". 525 S.W.2d at 608. In that case, the state conceded before trial that the defendant's evidence showed that he had exclusive possession of the area and made no attempt to show otherwise. In contrast, here, the state contended that Mr. and Ms. Cummings had sufficient access and control to give a valid consent.

■ There are several factual differences which convince us that *Peterson* is not controlling here. Defendant was not paying rent for the room at the time of the search as was the defendant in *Peterson*. Defendant was not carrying a key to the room, but Mr. Cummings had a key in his front pocket when the officers arrived. By describing the guns it was obvious that Mr. Cummings had been in the area recently. There was no door from the room directly outdoors as was the case in *Peterson*.

Defendant ate many meals with the family upstairs, used the family room, paid no utilities, and sometimes received clothes from his mother. We think this is not a situation where defendant should be treated as an independent renter, but as a son living with his mother, not for any monetary consideration, but because of their relationship.

As a member of the family of the house where his mother was the "main" occupant and where another person living there had a key to the area in the basement where defendant slept, defendant could anticipate that Mr. or Ms. Cummings might enter the room or authorize other people to do so. It is common knowledge that a person living with a family member can usually expect, and receives, more intrusion into his private life than does a person living in his own separate portion of a building with nonrelatives or strangers occupying other parts of the building.

Defendant claimed that he rented the premises and would pay his mother rent when he was working. The officers were told otherwise. However, even if defendant had occasionally paid rent that does not alone establish that Jack Cummings and defendant's mother did not have sufficient access to the area complained of to grant the consent. See *United States v. Wright*, 564 F.2d 785, 790 (8th Cir.1977). It appears that it takes unusual circumstances for a child living with a parent to claim that the parent does not have permission to consent to a search of the child's sleeping area even if the child is an adult. See 2 LaFave, Search and Seizure, § 8.4(b), at 731–736 (1978).

Once inside the room it was not necessary for the officers to search further to find the guns as they were apparently in plain view. Had they been in a foot locker or other container the result might be different. See *State v. Pinegar*, 583 S.W.2d

217 (Mo.App.1979). See also *United States v. Block*, 590 F.2d 535 (4th Cir.1978).

Under the circumstances, at least defendant's mother had sufficient access and control to grant the consent. The judgment is affirmed.

HOGAN, P.J., and MAUS and CROW, JJ., concur.