STATE of Missouri,
Plaintiff–Respondent,

v.

David BUNCH, Defendant–Appellant.

Nos. 56159, 56236.

Missouri Court of Appeals,
Eastern District,
Division Five..

April 3, 1990.

Henry B. Robertson, Asst. Public Defender, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

JOSEPH J. SIMEONE, Senior Judge.

This is an appeal by defendant-appellant, David Bunch, from a judgment of convic-

tion entered January 6, 1989 sentencing him, as a prior and persistent offender, to eight years for the offenses of burglary, second degree, and stealing more than $150.00. Sections 569.170, 570.030, 558.-016, 557.036.4, R.S.Mo.1986. We affirm.

On April 22, 1988, appellant was in the holdover at the Third District Police Station on unrelated charges. There he made a statement to police officer Charles Marvin that a "person by the name of Marvin Greg Davies had some stolen ladders in the basement of 4746 Michigan [a two family residence] where [Bunch] was staying." Officer Marvin related the information to Detective Linn Laird of the Third District. Together with Detectives Roy Douglas, Bill Murphy and Larry Pervis, Laird went to the Michigan address. There the detectives were met by Stephanie Garrett, the person who rented the premises and Larry Lillard. Laird told Garrett "why we're there" and told her that he believed that there were some "stolen ladders there." He then asked Garrett if the officers could search "her residence." Garrett signed a formal "Consent to Search." As soon as she opened the door leading to the second floor, the officers saw an aluminum walk board, seized it and went upstairs to a second floor room which "looked like it was used as a bedroom" and there they found numerous tools, paint sprayers, a floor jack and two bicycles, one having a tag "From Mom and Dad to Adrian." Lillard then took the officers to the basement. There they found two aluminum ladders, chained together, with a lock on them. The officers seized all the property and transported it to the District Station.

Then the officers started running the information through the computer trying to identify the property and the victims. Eventually, the officers determined that the ladders were the property of Stephen K. Crabtree which had been taken from his back yard; the bicycles were the property of Kathleen Stone which had been taken out of her garage and which she had purchased for her children; and other property including a spray gun, and a floor jack were the property of George Paddock which had been taken from his closed garage. The owners of the various items eventually identified their property and it was returned to them. All three victims testified at trial.

After the officers recovered the property from the Michigan address, they confronted the appellant and told him they had identified the owners of some of it and asked for his assistance in finding the owners of property not yet located. Detectives Murphy and Douglas talked to appellant in the holdover, and advised him that they had recovered some property. Bunch wanted to know "if we could help him." Bunch stated to the detectives "I want you to know I didn't do any of the burglaries or steal anything." Bunch was removed from the holdover and they drove around the third district where Bunch pointed out the various places where the offenses occurred. Bunch told the officers that the spray painters came from the garage. He said that "they had gotten some bicycles out of the garage." Bunch made incriminating statements concerning the offenses.

Apparently, some time later, Bunch was released from the holdover and on April 24, 1988, Bunch was arrested for the burglaries and stealing at his home on Ann Avenue. He was taken to the third district, advised of his rights and made a formal written statement relative to the incidents he had previously pointed out. He confessed to taking the bicycles and other property, and confessed to taking the property to Larry Lillard, but that it was all "Greg's idea," and "he just went along." The written statement stated that "in all of the stealings Greg was the driver and the brain. He stole because he had a dope habit." The statement clearly implicated the appellant.

The jury found Bunch guilty on two counts of burglary and one count of stealing. After denial of his motion for new trial, Bunch was sentenced on January 6, 1989 to eight years on each count to run concurrently.

On this appeal, appellant contends that the trial court erred in overruling his objections to testimony by the police officers of the search of the Michigan residence because it was made without a warrant and the state failed to prove that the search was voluntary or that Stephanie Garrett had the authority to consent to a search.

It is axiomatic that the Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. This Amendment applies to the various states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio,* 367 U.S. 643, 654–655, 81 S.Ct. 1684, 1691–1692, 6 L.Ed.2d 1081 (1961). In this case, it is clear that there was no search warrant, and a search without a warrant is unreasonable under the Fourth Amendment unless it falls within certain, narrow, carefully delineated exceptions. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *State v. Rush,* 497 S.W.2d 213, 215 (Mo.App.1973); *State v. DuBose,* 617 S.W.2d 509, 513 (Mo. App.1981). One of the recognized exceptions is a search with consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973); *State v. Rush, supra,* 497 S.W.2d at 215. A search conducted pursuant to a valid consent is constitutionally permitted. *State v. Berry,* 526 S.W.2d 92, 98 (Mo.App. 1975); *State v. Cole,* 706 S.W.2d 917, 918 (Mo.App.1986). Consent must be voluntary, not induced by fraud or coercion and may be express or implied. *State v. Witherspoon,* 460 S.W.2d 281, 288 (Mo.1970).

■ The state must prove consent to a warrantless search by a preponderance of the evidence. *State v. DuBose, supra,* 617 S.W.2d at 514. In determining whether the consent is voluntary, the totality of the surrounding circumstances must be considered. *Schneckloth v. Bustamonte, supra,* 93 S.Ct. at 2047. This determination depends on many factors, including but not limited to, the number of officers present, the degree to which they emphasized their authority, whether weapons were displayed, whether the person was already in police custody, whether there was any fraud or misleading statements on the part of the officers and the evidence as to what was said and done by the person consenting. *State v. Rush, supra,* 497 S.W.2d at 215.

■ Upon considering the totality of the circumstances in this case, we conclude that Stephanie Garrett, the person who rented the premises, voluntarily consented to a search of the Michigan Avenue residence. The officers told her why they were there, she was asked if they could search the premises, she consented and signed a formal consent form. There was no duress, fraud, misleading statements or force used. The mere fact that there was more than one officer present is not decisive. *State v. Grannemann,* 715 S.W.2d 563, 565 (Mo.App.1986).

■ Stephanie Garrett, as the person who rented the residence, had authority to consent to the search. Although Bunch may have been "staying" there, his home or residence was on Ann Avenue where he was arrested. That was the address shown on the complaint and indictment. There is no evidence that appellant was paying any rent or had exclusive use of the bedroom where some of the stolen goods were found. It is the general principle that when the consent to search a location is given by a third person, if the third person has joint access or control of the premises sought to be searched, that person has authority to consent to the search. Moreover, the consent of one who possesses common authority over premises or effects is valid as against the absent person with whom that authority is shared. *See State v. Bryant,* 705 S.W.2d 559, 562 (Mo.App. 1986)—defendant just "staying" there; *State v. Cole, supra,* 706 S.W.2d at 919; *annot.,* 31 A.L.R.2d 1078 (1953) and Supp.; *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Some of the evidence here was found in a common area—the basement.

Furthermore, there is a real question whether appellant had standing to raise the issue of an illegal search and seizure. There is no evidence to show that appellant had any possessory interest in Garrett's residence. He had no exclusive possession of any part of the premises. One cannot object to searching of another's premises if the latter consents to the search. *State v. Stuart*, 415 S.W.2d 766, 768 (Mo.1967); *annot.*, 31 A.L.R.2d 1078, 1081 (1953) and Supp.

We conclude that Garrett voluntarily consented to the search and that, under the circumstances, she had the authority to consent.

Appellant also contends that the incriminating oral and written statements given to the police implicating him in the offenses were the fruit of the illegal search and seizure and, therefore, these statements should also have been excluded by the trial court. Since we have concluded that there was no illegal search or seizure in violation of the Fourth Amendment, this contention is without merit.

We have read the entire record, the briefs and authorities relied upon by appellant and conclude there is no error; hence the judgment of conviction must be affirmed.

Judgment affirmed.

SIMON, C.J., and DOWD, P.J., concur.